36 F.3d 1091
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Velma D. CARTER, Plaintiff-Appellant,
v.
Philip MORRIS, USA, Defendant-Appellee,
and
Jerry L. Sprouse, Individually and in his capacity as
President of Local 203T of the Bakery, Confectionery and
Tobacco Workers Union; The Bakery, Confectionery and
Tobacco Workers International Union, Local 203T, Defendants.
 No. 94-1220.
 United States Court of Appeals, Fourth Circuit.
 Submitted June 21, 1994.
Decided Oct. 3, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Richard L. Williams, Senior District Judge. (CA-93-17).
 Velma D. Carter, appellant Pro Se.
 Patricia Kyle Epps, Marguerite Rice Ruby, Hunton & Williams, Richmond, VA, for appellee.
 E.D.Va.
 AFFIRMED.
 Before NIEMEYER and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Velma D. Carter appeals from the district court's order granting summary judgment in favor of Philip Morris, Inc. ("Philip Morris") in Carter's racial harassment action. Finding no error, we affirm.
 
 
 2
 * Carter, a former employee of Philip Morris, alleged that she was subjected to several incidents of racial harassment from fellow employees.[1] Carter alleged that she complained to her supervisors after each incident and that no action was taken against the offending parties. Moreover, Carter alleged that her employment was terminated in retaliation for her complaints. Carter filed suit in the district court pursuant to 42 U.S.C.A. Sec. 1981 (West 1981 & Supp.1994), alleging that by condoning this racially hostile work environment, Philip Morris denied her the right to make and enforce contracts. The district court granted summary judgment in favor of Philip Morris. Carter timely appeals.
 
 II
 
 3
 Under Sec. 1981, all persons are guaranteed the same right "to make and enforce contracts." Prior to the Civil Rights Act of 1991, however, employer conduct subsequent to the formation of an employment contract was not actionable under Sec. 1981. See Patterson v. McLean Credit Union, 491 U.S. 164, 171 (1989). Congress broadened the scope of the "make and enforce contracts" clause of Sec. 1981. Consequently, racial harassment is now cognizable underSec. 1981. However, only incidents alleged to have occurred prior to November 21, 1991--the Act's effective date--are cognizable under Sec. 1981 as amended by Sec. 101. Rivers v. Roadway Express, Inc., 62 U.S.L.W. 4271 (1994).
 
 
 4
 Four of the five claims of racial harassment alleged by Carter occurred prior to November 21, 1991; hence, they are not cognizable under Sec. 1981. Carter's fifth claim alleged that she was racially harassed when a white male co-worker searched her prior to a meeting at which she was suspended from Philip Morris. Philip Morris denied that a search occurred, but did admit that on the day in question, Carter was suspended for threatening other employees. Assuming that such a search occurred, Carter's claim fails because she did not establish any facts showing that the search amounted to racially harassing conduct, or was sufficiently severe as to create an abusive working environment. See White v. Federal Express Corp., 939 F.2d 157, 160 (4th Cir.1991).
 
 III
 
 5
 Carter also alleged that she was suspended and subsequently fired in retaliation for her complaints of racial harassment. The unrebutted affidavits and depositions, however, show that Carter never complained about racially motivated harassment. Moreover, Carter was suspended for threatening her co-workers, and was subsequently fired after refusing to return to work. Accordingly, Carter has not shown a causal connection between her discharge and her complaints. See Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989).
 
 
 6
 We therefore affirm the order of the district court granting summary judgment in favor of Philip Morris.[2] Carter v. Sprouse, No. CA93-17 (E.D. Va. Jan. 10, 1994). We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 7
 AFFIRMED.
 
 
 
 [1]
 Carter alleged the following: (1) In October 1990, two employees posted a picture of a sumo wrestler on her locker and wrote "this is me, Velma Carter. I don't take no shit;" (2) in November 1990, another sign was placed on her locker indicating that her perfume stank; (3) in December 1990, a white female employee poured loose tobacco on her car; (4) in January 1991, another white employee pushed a bucket of water on her; and, (5) in December 1991, she was searched by a white male co-worker after she made a statement construed by her supervisor as a threat against other employees
 
 
 [2]
 In her responsive memorandum to Philip Morris' motion for summary judgment, Carter alleged that the incidents complained of really amounted to sexual harassment. Sexual harassment, however, is not cognizable under Sec. 1981. And, to the extent Carter has stated a claim under Title VII, by her own admission she failed to timely file her complaint with the EEOC. Carter has not alleged any equitable reasons to toll the limitations period, and Philip Morris raised her failure to exhaust this administrative remedy as a defense to the charge. Accordingly, we do not have authority to consider this claim. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). However, we note that Carter has not alleged any facts establishing that she was sexually harassed